IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:15-CV-00257-RLV

| | |
|---|---|
| LEON L. LADDA, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| | ) |
| CAROLYN W. COLVIN, ACTING | ) |
| COMMISSINER OF SOCIAL SECURITY, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on cross-motions for summary judgment. (Docs. 11, 13). For the reasons that follow, the Plaintiff's Motion for Summary Judgment (Doc. 11) is **DENIED**, the Defendant's Motion for Summary Judgment (Doc. 13) is **GRANTED**, and the decision of the Commissioner is hereby **AFFIRMED**.

**I.  ADMINISTRATIVE HISTORY**

On December 19, 2011, Plaintiff Leon L. Ladda, Jr., protectively filed applications for disability insurance benefits and for supplemental security income under Titles II and XVI of the Social Security Act, alleging an inability to work due to a disabling condition commencing on November 9, 2011. (Tr. 19). The Commissioner of Social Security ("Commissioner" or "Defendant") initially denied Plaintiff's application on February 2, 2012 and, upon reconsideration, again denied the application on May 28, 2012. On June 28, 2012, Plaintiff filed

1

a written request for a hearing. (Tr. 136-38). Plaintiff's request was granted and a hearing was held before Administrative Law Judge Wendell M. Sims ("ALJ Sims").

At Step One, ALJ Sims found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 21). At Step Two, ALJ Sims found that the injuries Plaintiff sustained in a vehicular accident resulted in a severe medically determinable impairment(s) consisting of osteoarthritis, neuropathy, and chronic pain. *Id*. At Step Three, ALJ Sims concluded that none of Plaintiff's impairments, or a combination thereof, met the Listings. (Tr. 21-22). ALJ Sims then assessed Plaintiff's residual functional capacity, first making findings about Plaintiff's credibility, injuries, and limitations and then applying those findings to determine that Plaintiff could "perform tasks at the light exertional level," with a restriction for only occasional climbing and balancing. (Tr. 22-27). Based on this determination, ALJ Sims, at Step Four, concluded that Plaintiff was unable to return to his past relevant work as a baker. (Tr. 27). However, at Step Five, ALJ Sims decided, with the assistance of a vocational expert, that Plaintiff was not disabled because there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including an unskilled housekeeper, a cafeteria attendant, and a mail clerk. (Tr. 28).

Plaintiff requested that the Appeals Council review ALJ Sims's adverse decision. (Tr. 9; 272-73). Specifically, Plaintiff contended that ALJ Sims improperly discredited his testimony based on his failure to seek physical therapy treatment and that ALJ Sims incorrectly weighed the evidence regarding his pain and the impact of that pain on his ability to work. (Tr. 272-73). The Appeals Council denied Plaintiff's request for review. (Tr. 1-3). Plaintiff timely filed this action seeking judicial review of the denial of benefits.

## II. DISCUSSION

### A. Standard of Review

The Social Security Act, 42 U.S.C. §§ 405(g), § 1383(c)(3) (2006), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966)) (internal quotation marks and citation omitted). "In reviewing for substantial evidence, [a court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (quoting *Craig*, 76 F.3d at 589)).

### B. Analysis

In his motion for summary judgment, Plaintiff contends that ALJ Sims (1) did not perform a complete function-by-function analysis before determining Plaintiff's residual functional capacity, and (2) did not provide legally sufficient reasons in support of his adverse credibility determination. (Doc. 12 at 5-15). Because an ALJ must consider a claimant's testimony before determining the claimant's residual functional capacity *see Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015), the Court will consider Plaintiff's challenge to ALJ Sims's credibility determination before Plaintiff's challenge to ALJ Sims's residual functional capacity assessment.

i. *Credibility Determination*

The law provides a two-part test for evaluating the probative weight to be assigned to a claimant's statements about symptoms and pain. *Craig*, 76 F.3d at 589. First, there must be "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 594 (quotation marks, citations, and emphasis omitted). If the ALJ determines that such an impairment exists, the second part of the test then requires the ALJ to consider all available evidence, including the claimant's statements about limitations and about pain, in order to determine whether the person is disabled. *Id.* at 595-96; 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

While an ALJ must consider a claimant's statements during the second part of the analysis, he need not credit them to the extent they conflict with the objective medical evidence of record. *Craig*, 76 F.3d at 596. Relevant evidence for this inquiry includes the claimant's "medical history, medical signs, and laboratory findings," *id.* at 595, as well as various regulatory factors,[1] Social Security Regulation ("SSR") 96-7p, 1996 WL 374186 at *3.[2] Although the ALJ must consider each of the relevant factors, "[t]he regulations do not mandate that the ALJ discuss all these factors in a decision." *Allmon v. Colvin*, 2016 WL 6651326, at *2 n.4 (M.D.N.C. Nov. 10, 2016).

---

[1] The regulatory factors are: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (vi) any measures the claimant uses or has used to relieve pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[2] Subsequent to Plaintiff filing his complaint and his motion for summary judgment, the Social Security Administration superseded SSR 96-7p with SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). Social Security Ruling 16-3p eliminates the use of the term "'credibility' from . . . sub-regulatory policy" and "clarify[ies] that subjective symptom evaluation is not an examination of an individual's character." *Id.* at *1. Because SSR 96-7p was in effect at the time of ALJ Sims's decision, this Court will review the decision under SSR 96-7p. *See Keefer v. Colvin*, 2016 WL 5539516, at *11 n.5 (D.S.C. Sept. 30, 2016).

An ALJ's credibility determination is generally entitled to great deference. *Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984). This is because a reviewing court does not, and cannot, make credibility assessments. *See Craig*, 76 F.3d at 589. However, when considering whether the ALJ properly analyzed a claimant's credibility, the district court must determine if the reasons the ALJ provided for discrediting the claimant's testimony explain the extent to which the ALJ credited and discredited the claimant's testimony—i.e., which of the allegations and statements testified to by the claimant the ALJ credited and discredited. *See Mascio v. Colvin*, 780 F.3d 632, 639-40 (4th Cir. 2015); *see also Monroe v. Colvin*, 826 F.3d 176, 188-90 (4th Cir. 2016). Put another way, the ALJ's discussion of the claimant's credibility in light of the other evidence in the record must establish an "'accurate and logical bridge'" to the ALJ's decision to credit or discredit the relevant aspects of the claimant's testimony. *See Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

At his hearing, Plaintiff testified that he experiences pain and tingling in his right hand, left hip, and back. (Tr. 22, Tr. 39). As a result of this alleged pain, Plaintiff testified that he could only walk for ten to fifteen minutes without the assistance of a walker and that he uses a cane or a crutch for walks up to ten or fifteen minutes and when traversing stairs. (Tr. 22-23, 40-42). As for lifting objects, Plaintiff stated that one of his hands was fine and could lift up to forty pounds but that the other hand could only lift five pounds. (Tr. 22, 42, 44). Plaintiff further testified that his left knee often gave out if he stood on it too long and that pain in his hip and back prevented him from tying his shoes and that he needed help to get in and out of the bathtub. (Tr. 22, 42). Finally, when questioned by ALJ Sims about whether his doctor's advised him to ambulate without the assistance of a cane, Plaintiff offered conflicting testimony. (*See* Tr. 47-48). Initially Plaintiff denied receiving such advice, then he said he was told once to walk without a cane, and then he

5

redenied receiving that advice and stated, "[t]hey didn't tell me [to walk independently not using a cane], not as I remember. They didn't tell me that." *Id.*

After summarizing the aforementioned testimony (Tr. 22-23), ALJ Sims commenced his credibility analysis by stating:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Tr. 23). ALJ Sims then provided a detailed summary of Plaintiff's medical records. (Tr. 23-25). Specific to Plaintiff's back, hip, and knee injuries, ALJ Sims's review of Plaintiff's medical records show that, in January 2012, the surgical wound to his left knee was "well healed" and that his left femur "alignment was grossly stable" and that the "remaining bony structures were intact." (Tr. 23-24). In March 2012, Plaintiff presented with some soft tissue swelling in his left knee with a range of motion of 0-45 degrees of flexion, and no swelling in the lower portion of his left leg. (Tr. 24). At that time, Plaintiff's imaging showed "good clinical alignment" and healing in both the hip and the femur. *Id.* Imaging in June 2012 showed further healing of the left femur, leading Plaintiff's doctor to conclude that Plaintiff should walk without the assistance of a crutch. (Tr. 25). By September 2012, Plaintiff's range of motion in his left hip matched his range of motion in his right hip and he had regained full range of motion in his right knee and 0-110 degree range of motion in his left knee, improved from 0-45 degree range of motion in January and March 2012. *Id.* Plaintiff had also regained 5/5 strength in his hip flexors and extensors and his straight leg test was negative for back pain. *Id.* A second of Plaintiff's doctors advised Plaintiff to walk without the use of an assistive device such as a cane and to do more aggressive physical therapy

6

at home. *Id.* Plaintiff was also advised to switch off of narcotic pain medication, in favor of a non-steroidal anti-inflammatory. *Id.*

Based on his review of the medical records, ALJ Sims stated three interim conclusions: (1) the objective medical findings were not consistent with Plaintiff's alleged symptoms and limitations, (2) Plaintiff's condition was improving, and (3) Plaintiff's pain was "adequately managed with medications." (Tr. 23-26). ALJ Sims then briefly discussed Plaintiff's daily activities, concluding that his reported activities of attending church, brushing his hair, shaving, feeding himself, doing household chores, and driving shows that Plaintiff's condition improved and that he is able to "preform[] substantial gainful work activity" and "a higher level of functioning than alleged." (Tr. 26, 27). ALJ Sims then stated his ultimate credibility conclusion that the claimant's allegations of physical limitations to his ability to walk more than ten or fifteen minutes and to lift ten pounds were incredible and overstated Plaintiff's actual limitations. *Id.*

Central to Plaintiff's claim for benefits and his challenge to ALJ Sims's credibility determination was Plaintiff's testimony about pain in and functionality of his lower extremities. Viewing ALJ Sims's decision on the whole, it is readily apparent that ALJ Sims relied on Plaintiff's medical records to discredit Plaintiff's allegations of limited mobility in his lower extremities, including his need to use a cane when walking. Furthermore, the medical evidence cited by ALJ Sims constitutes substantial evidence in support of his conclusion as it demonstrates that Plaintiff's condition improved significantly from January 2012 to September 2012 and that multiple doctors concluded that Plaintiff was capable of, and needed to, walk without the assistance of a cane, walker, or crutch.[3] The recommended switch in medication also provides

---

[3] Notably, in challenging ALJ Sims's credibility determination, Plaintiff does not contend that ALJ Sims erred in discussing Plaintiff's medical records. Further, the medical records cited by ALJ Sims also contradict Plaintiff's testimony that doctors did not instruct him to ambulate without the assistance of a cane, walker, or crutch.

7

substantial evidence for ALJ Sims's conclusion that plaintiff's condition improved and that Plaintiff's pain was "adequately managed." Plaintiff, however, raises several specific issues with ALJ Sims's credibility determination, which the Court will discuss in turn.

First, Plaintiff contends that the language ALJ Sims employed at the start of his credibility analysis constitutes boilerplate language that does not provide any indication of why ALJ Sims found Plaintiff not entirely credible or which parts of Plaintiff's testimony ALJ Sims credited and discredited. (Doc. 12 at 9-10). Although the block-quoted language above is boilerplate language that does not provide a sufficient explanation of ALJ Sims's adverse credibility determination, the language merely summarized ALJ Sims's analysis that followed. Thus, read in context, the boilerplate language Plaintiff takes issue with presents no basis for remand and merely prepares a reader of ALJ Sims's decision for the conclusion within ALJ Sims's credibility determination.[4]

Second, Plaintiff criticizes ALJ Sims for relying on statements in Plaintiff's medical records stating that Plaintiff was "doing well." *Id.* at 11-13; (*see e.g.* Tr. 23, 24, 25). Plaintiff argues that descriptive phrases of this nature are of little value in assessing Plaintiff's credibility because they are expressions of Plaintiff's state relative to his poor condition following his vehicular accident and surgery. (Doc. 12 at 11-13). Absent proper context, a doctor's use of a descriptive phrase like "doing well" is ambiguous and provides an insufficient basis to discredit a claimant's testimony at the second part of the credibility analysis. *Kellough v. Heckler*, 785 F.2d 1147, 1153-54 (4th Cir. 1986); *see also Beck v. Astrue*, 2011 WL 4455861 (D.N.H. Sept. 23, 2011) (collecting cases concluding that words and phrases like "doing well" and "stable" are not indicative of the claimant's actual state absent consideration of the context the words are used in,

---

[4] To the extent ALJ Sims credited some of Plaintiff's statements and allegations, ALJ Sims's decision to limit Plaintiff to light work, rather than medium work as found by the medical consultants, makes it implicitly apparent which of Plaintiff's allegations ALJ Sims partially credited—i.e., primarily that Plaintiff could not lift fifty pounds occasionally or twenty-five pounds frequently.

8

specifically the claimant's medical history and prior condition).  Here, however, ALJ Sims's detailed discussion of Plaintiff's medical records over the course of several months, including an overview of Plaintiff's bone structure, strength, healing around the incision sites, range of motion, and nerve function, provide sufficient context for ALJ Sims's reliance on notations by Plaintiff's doctors that Plaintiff was "doing well." (*See* Tr. 23-25).

Third, Plaintiff attacks ALJ Sims's reliance on Plaintiff's daily activities when reaching the credibility determination, arguing that Plaintiff's ability to brush his hair, shave, feed himself, attend church, grocery shop, iron, and drive do not demonstrate that he is capable of working eight hours a day five days a week. (Doc. 12 at 13-14).  Had ALJ Sims relied exclusively, or even heavily, on these daily activities to conclude that Plaintiff was not credible and could perform light work, the Court would agree, in part, with Plaintiff's assignment of error.[5]  In actuality, ALJ Sims only relied on Plaintiff's daily activities as some evidence, primarily in conjunction with Plaintiff's medical records, that Plaintiff's condition was improving. (*See* Tr. 26).  Accordingly, ALJ Sims's limited reliance on Plaintiff's daily activities does not constitute error.

Even, however, if ALJ Sims's opinion could be read as relying on Plaintiff's daily activities as direct and independent evidence that contradicts Plaintiff's alleged symptoms and pain, any error would be harmless in light of the other reasons ALJ Sims provided for discounting Plaintiff's alleged pain and functional limitations.  Although an ALJ may err in assessing one aspect of the record relative to the claimant's credibility, the error is harmless "so long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion." *Carmickle v. Comm'r Soc. Sec. Admin*,

---

[5] While Plaintiff's ability to brush his hair, shave, feed himself, iron, and drive do not provide much evidence of his ability to work or stand, these daily activities are relevant to Plaintiff's ability to use his hand and to the progress and prognosis of his wrist injury.

9

533 F.3d 1155, 1162 (9th Cir. 2008) (internal quotation marks and brackets omitted). Here, ALJ Sims's thorough discussion of Plaintiff's medical records renders any error in assessing Plaintiff's daily activities harmless.

Fourth, and finally, Plaintiff argues that ALJ Sims erred in judging Plaintiff's credibility where ALJ Sims mistakenly concluded that Plaintiff did not attend physical therapy. (Doc. 12 at 14-15). In actuality, ALJ Sims concluded that Plaintiff "routinely denied treatment or modalities that could have potentially helped [Plaintiff] with his pain problems." (Tr. 26). In support of this conclusion, ALJ Sims noted Plaintiff's failure to pursue physical therapy as recommended by Plaintiff's doctors. *Id.* Although the record, as Plaintiff points out, shows that Plaintiff attended four sessions of physical therapy in 2011, it also strongly suggests that Plaintiff discontinued physical therapy in 2012 and that Plaintiff did not follow doctors' instructions regarding activities outside of physical therapy that could improve his mobility and prognosis, including the repeated instructions to place more weight on his left leg and not to use an assistive device when walking.[6] (*See* Tr. 404). ALJ Sims also supported his conclusion that Plaintiff failed to follow medical advice through citation to Plaintiff's refusal to have sutures removed and the repeated suggestions of doctors that Plaintiff needed to be more aggressive with his range of motion exercises. (Tr. 24, 26). Accordingly, substantial evidence supports ALJ Sims's conclusion and ALJ Sims was entitled to draw from this conclusion that Plaintiff's allegations of limitations and pain were not credible. *See Hunter v. Sullivan*, 993 F.2d 31, 36 (4th Cir. 1992) (Plaintiff's failure to fill prescriptions, attend prescribed physical therapy, and undergo treatment for condition permitted inference that Plaintiff was not credible as to severity of and limitations caused by condition).

---

[6] Although Plaintiff identifies one medical note suggesting that Plaintiff attended four physical therapy sessions in 2011, he does not cite anything in the record suggesting that he attended any physical therapy sessions in 2012 or otherwise did any range of motion or strength exercises on his own.

10

ii. *Residual Functional Capacity*

Before determining at Step Four whether a claimant can perform his past relevant work, the ALJ must conduct a residual functional capacity assessment. *Mascio*, 780 F.3d at 635. Residual functional capacity is defined as "'an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.'" *Id.* at 639 (quoting SSR 96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)) (emphasis omitted). In assessing a claimant's residual functional capacity, the ALJ "'must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Id.* at 636 (quoting SSR 96-8p, 61 Fed. Reg. at 34,475 (July 2, 1996)). Furthermore, an ALJ's "residual functional capacity 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Id.* (quoting SSR 96-8p, 61 Fed. Reg. at 34,478).

First, Plaintiff contends that ALJ Sims failed to consider Plaintiff's use of a cane in the residual functional capacity assessment and that this error resulted in ALJ Sims not including a restriction on ambulation and the need for a walking assistive device when posing the hypothetical to the vocational expert. (Doc. 12 at 6-7). In light of the prior discussion regarding the medical records and ALJ Sims's determination that Plaintiff's allegation that he needed a cane was not credible, ALJ Sims did not need to account for the use of a walking assistive device in the residual functional capacity assessment. *See Kearse v. Massanari*, 73 F. App'x 601, 604 (4th Cir. 2003)

(ALJ does not err by not including limitation in hypothetical to vocational expert limitation that ALJ discredited through reliance on substantial evidence).

Second, Plaintiff contends that ALJ Sims failed to include a restriction accounting for Plaintiff's reduced grip strength in his right hand. (Doc. 12 at 7). In support of this argument, Plaintiff cites a single "patient visit form" that notes reduced grip strength on a physical exam. (*See* Tr. 628). None of the other three patient visit forms from Plaintiff's prior and subsequent visits include a notation of reduced grip strength. (*See* Tr. 627, 629-30). Plaintiff also fails to point to any evidence in the rest of the medical record that suggests Plaintiff suffered from reduced grip strength. Furthermore, the lone notation cited by Plaintiff does not specify to what degree Plaintiff's grip strength was reduced on the day of the visit. (Tr. 628). Accordingly, where the only evidence Plaintiff cites for his contention that he suffered from reduced grip strength is a single, unelaborate notation on a patient visit form, it is not apparent that ALJ Sims needed to include a discussion of Plaintiff's grip strength in the residual functional capacity assessment.

Third, Plaintiff argues that ALJ Sims did not properly analyze Plaintiff's ability to walk, stand, sit, crouch, kneel, or crawl. ALJ Sims's discussion of Plaintiff's medical records specific to the strength, range of motion, bone structure, and healing of Plaintiff's left leg directly related to ALJ Sims's conclusions regarding Plaintiff's ability to walk, stand, and sit. As for Plaintiff's ability to crouch, kneel, or crawl, the medical consultants concluded that Plaintiff did not suffer from any limitation as to those motions. (Tr. 81, 92). Nothing in Plaintiff's hearing testimony directly contradicts the findings of the medical consultants as to crouching, kneeling, or crawling and Plaintiff's brief before this Court does not identify any evidence in the record that suggests a limitation regarding his ability to crouch, kneel, or crawl. Accordingly, ALJ Sims did not commit reversible error by not discussing these motions as part of the residual functional capacity

assessment. *See Mascio*, 780 F.3d at 636 (rejecting per se rule requiring remand in instances where "ALJ does not discuss functions that are 'irrelevant or uncontested'" (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013))).

Fourth, and finally, Plaintiff argues that ALJ Sims failed to consider his functional limitations within the context of his ability to perform the functions over the course of a full work day. (Doc. 12 at 8-9). The Commissioner argues that ALJ Sims did discuss Plaintiff's capacity to perform functions over the course of a full work day and that even if he did not directly discuss the Plaintiff's functional capacity within the context of a full work day, remand would be futile because no evidence in the record contradicts a finding that Plaintiff can perform the relevant functions over the course of a full work day. (Doc. 14 at 9-10). ALJ Sims's direct discussion of Plaintiff's functional capacity over the course of a full work day is scant. (*See* Tr. 22-27). Nonetheless, the Court concludes that remand is not necessary to address any deficiency in ALJ Sims's decision.

"'[R]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, *despite contradictory evidence in the record*, or where other inadequacies in the ALJ's analysis *frustrate meaningful review*.'" *Mascio*, 780 F.3d at 637 (emphasis added) (quoting *Cichocki*, 729 F.3d at 177). Here, although an explicit statement about Plaintiff's ability to function over the course of a full work day would have simplified the judicial review process, the Court's ability to meaningfully review ALJ Sims's decision is not frustrated. Plaintiff's brief to this Court cites no evidence for the proposition that Plaintiff could not walk, sit, or stand for the requisite period of time associated with light work and the only conflicting evidence identified in ALJ Sims's decision is Plaintiff's own testimony. Accordingly, where ALJ Sims relied on substantial evidence to discredit Plaintiff's testimony, no dispute in the evidence

remained as to Plaintiff's ability to perform the requisite functions over the course of a full work day and this Court is fully able to review the reasoning supporting ALJ Sims's decision.

## III. DECRETAL

**IT IS, THEREFORE, ORDERED THAT:**

(1) Plaintiff's Motion for Summary Judgment (Doc. 11) is **DENIED**;

(2) Defendant's Motion for Summary Judgment (Doc. 13) is **GRANTED**; and

(3) The decision of the Commissioner is **AFFIRMED**.

Signed: January 31, 2017

Richard L. Voorhees
United States District Judge